**WO**  SKC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| George Milton Wicker, | No. CV-21-01791-PHX-MTL (ASB) |
| Plaintiff, | |
| v. | **ORDER** |
| Unknown Horton, et al., | |
| Defendants. | |

Plaintiff George Milton Wicker, who is confined in the Arizona State Prison Complex-Eyman, brought this civil rights action pursuant to 42 U.S.C. § 1983. Defendant Sergeant Horton moves for summary judgment. (Doc. 41.) Plaintiff was informed of his rights and obligations to respond pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) (Doc. 43), and he opposes the Motion. (Doc. 46.) The Court will grant the Motion for Summary Judgment.

**I.  Background**

On screening Plaintiff's three-count Complaint under 28 U.S.C. § 1915A(a), the Court determined Plaintiff stated a Fourteenth Amendment due process claim against Defendant in Count Three based on Defendant's alleged confiscation of Plaintiff's mail without giving him an opportunity to appeal to an independent official. (Doc. 7.) The Court required Defendant to answer the claim and dismissed the remaining claims and Defendants. (*Id.*)

. . . .

## II. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

. . . .

. . . .

. . . .

## III. Facts

### A. Prison Policies

#### 1. Prisoner Mail

Arizona Department of Corrections, Rehabilitation, and Reentry ("ADCRR") Department Order ("DO") 914 governs the sending and receipt of prisoner mail. (Doc. 42, Def.'s Statement of Facts (DSOF) ¶ 3.) All prisoner mail is processed consistent with postal regulations and the security needs of the facility. (*Id.*)

Mailroom staff are authorized to open, inspect, and read incoming mail to prevent criminal activity and prisoners from receiving contraband or any other material that may be detrimental to the safe and orderly operation of the institution. (*Id.* ¶ 7.) Upon inspection, incoming mail must be withheld if it meets one or more of the following criteria:

- Poses a direct threat to the safety, security, or order of the institution
- Substantially hinders efforts to treat or rehabilitate the prisoner
- Threatens the intended recipient
- Promotes, aids, or abets criminal activity or violation of Department rules
- Has content written in code or that contains hidden messages

(*Id.* ¶ 8.)

Mail meeting one or more of the above criteria must be forwarded to the Criminal Investigation Unit ("CIU") for review, and the CIU must return the mail within 72 hours unless it determines an investigation is required, in which case it is held. (*Id.* ¶ 9.) If the CIU determines the mail should not be delivered, the prisoner is notified, unless notification will interfere with the investigation. (*Id.*)

#### 2. Property

DO 909, section 6.0 governs unauthorized property received by mail. (*Id.* ¶¶ 18, 19.) If unauthorized property arrives by mail, mailroom staff must complete an Inmate Property/Contraband/Disposition Tracking Form and notify the prisoner in person within three workdays. (*Id.* ¶ 20.) The prisoner may elect how to dispose of the property, i.e., donate it to ADCRR, have it destroyed, or have it sent to a friend or family member in the

community, and will have 90 days to notify designated staff of the desired disposition. (*Id.* ¶¶ 22, 24.) In the event prison staff uphold the confiscation, the prisoner can elect a final disposition of the property at that time. (*Id.* ¶ 29.)

### B. Plaintiff's Confiscated Mail

#### 1. August 6, 2020

On August 6, 2020, Defendant was assigned to the Eyman mailroom to process incoming mail and assess it for contraband. (Id. ¶ 29.) Prisoner mail is opened at random for contraband, and that day, Defendant opened mail addressed to Plaintiff from Elite Paralegal Services ("EPS") to review its contents. (*Id.* ¶¶ 1, 30.) The envelope contained a flyer from EPS, which stated, "We . . . accept stamps (if not in violation of prison policy) for EPS services at the rate of 75% of face value; 65% of face value for checks or money orders sent to other businesses or for a deposit to your inmate account." (*Id.* ¶ 30; Doc 42-1 at 75.) The envelope also contained a "Memo/Invoice" in response to a letter Plaintiff sent to EPS on June 22, 2020 requesting the cost of legal research materials and case law and the status of Plaintiff's account. (Doc. 47, Pl.'s Statement of Facts (PSOF) ¶ 30.) In the Memo/Invoice, EPS identified a case that was "the closest match I located to your request" and stated that the "cost would be 6.00. You have .50 on account after 1.00 s/h fee." (Doc. 48 at 19.)

Department Order (DO) 914, Section 1.2.3 prohibits the use of postage stamps as payment for materials ordered from private vendors. (DSOF ¶ 31.) Defendant confiscated Plaintiff's mail from EPS and completed the relevant portions of the Inmate Property/Contraband/Disposition Tracking Form, indicating the location/unit where the mail was confiscated, the date and time, and Plaintiff's name and prisoner i.d. number. (*Id.* ¶ 33.) Defendant identified the property as an "envelope from EPS" and the violation as "Department Order 914.1.2.3—purchase of products with postage stamps," which he erroneously wrote was a non-appealable violation. (*Id.* ¶ 34.) Department Orders do not prohibit prisoners from appealing or grieving this issue. (*Id.*) Prisoners may raise the issue by submitting an Inmate Letter, grievance, or by speaking to the officer who notified them

of the confiscation. (*Id.* ¶ 35.) Defendant did not submit Plaintiff's confiscated mail to CIU for an investigation as required under DO 914 for mail that promotes, aids, or abets a violation of Department rules. (PSOF ¶ 58.) Based on Defendant's knowledge, this provision only applies to circumstances that are criminal in nature and does not apply to suspected use of postage stamps as payment for materials ordered from private venders. (DSOF ¶¶ 10−11.) To Defendant's knowledge, if the suspected rule violation does not rise to the level of a criminal violation, it is forwarded to the prisoner's Unit Mail and Property for follow up by another officer. (*Id.* ¶ 12.),

An officer at Meadows Unit Mail and Property (not Defendant) notified Plaintiff that his mail from EPS was confiscated on suspicion of contraband, and Defendant had no further involvement in this mail. (*Id.* ¶ 36.) On August 11, 2020, Plaintiff signed the Inmate Property/Contraband Disposition Tracking Form, which gave him the options to have the property donated to ADCRR, destroyed, or held for appeal, and Plaintiff opted to have the property destroyed. (*Id.* ¶ 41.) Plaintiff did so because the property was a brochure from EPS, and he had already received multiple brochures from EPS over the years. (PSOF ¶ 40.) Defendant was unaware of any objections Plaintiff made regarding the handling of the August 6, 2020 mail, even though, after being informed of the confiscation, Plaintiff could have grieved the matter through the facility grievance procedures. (DSOF ¶¶ 38, 40.)

### 2. September 7, 2020

On September 7, 2020, Defendant processed incoming mail at the complex mailroom and again confiscated mail addressed to Plaintiff from EPS out of concern that Plaintiff was making purchases with postage stamps, in violation of DO 914 section 1.2.3. (*Id.* ¶ 42.) Defendant completed the Inmate Property/Contraband/Disposition Tracking Form and forwarded it and the confiscated mail to Meadows Unit Mail and Property for further disposition. (*Id.* ¶ 43.) As before, Defendant identified the violation as DO 914.1.2.3, "purchase of products or service with postage stamps," and wrote that the this was a "non-appealable violation." (Doc. 42-1 at 79.) On September 11, 2020, Plaintiff

went to Meadows Unit Mail and Property and checked the box on the Inmate Property/Contraband Disposition Tracking Form, opting that the mail (another EPS flyer) be destroyed. (DSOF ¶ 47; PSOF ¶ 47(2).)

On September 14, 2020, Plaintiff submitted an Inmate Letter to Defendant, complaining that, on September 10, 2020, he received the Inmate Property/Contraband Disposition Tracking Form, which stated he had made purchases with postage stamps in violation of DO 914. (*Id.* ¶ 44.) Plaintiff wrote,

> This is in FACT NOT TRUE. []See Inmate Request for Withdrawal−External, approved by CO IV Moore on 08/12/2020, payable to Elite Paralegal Service for $20.00 dollars, ADOC check #500463428. Please recheck this issue for me. Verify that I purchased my legal research/case law material with a check from ADOC and stop contrabanding my legal research/case law material. This is interferring (sic) with my right to legal access to the Court system.

(Doc. 42-1 at 81.) Plaintiff did not receive a response from Defendant. (PSOF ¶ 35(3).)

### 3.     October 30, 2020[1]

On November 3, 2020, non-defendant Officer Camacho, who was assigned to Meadows Unit Mail and Property, notified Plaintiff that more mail addressed to him from EPS had been confiscated as contraband. (DSOF ¶ 45.) According to Camacho, Plaintiff did not raise any issues with the confiscation of this mail, and had he done so, Camacho would have assisted him. (*Id.* ¶¶ 45−46.) Plaintiff states he informed Camacho that he did not purchase anything from EPS with postage stamps but paid EPS using an ADCRR check. (PSOF ¶ 46.) Plaintiff did not receive his confiscated materials from Camacho, so he submitted an Informal Complaint. (*Id.* ¶ 47(10).)

. . . .

---

[1] Defendant's evidence shows only that Plaintiff received notice of another confiscation on November 3, 2020; it does not show when the confiscation occurred or who confiscated the mail. Based on Plaintiff's allegations in the Complaint (Doc. 1 at 8 ¶¶ 1, 3), and consistent with Plaintiff's November 3, 2020 Inmate Letter (Doc. 42-1 at 83 and DSOF ¶¶ 34), Defendant confiscated this mail on October 30, 2020.

### C. Plaintiff's Grievances

On November 3, 2020, Plaintiff submitted an Inmate Informal Complaint Resolution, stating that, on October 30, 2020, he received another notice from Property concerning contraband mail from EPS. (Doc. 42-1 at 83.)[2] Plaintiff did not have the notice with him, which was then in the Meadows Unit Property Room, but he stated he presumed the reason for confiscating the EPS mail was the same as before, "purchasing with stamps," which he wrote was "not true." (*Id.*) Plaintiff explained,

> I purchased this case law (legal research) with a check from DOC, please see check # 500463428 payable to Elite Paralegal Service, LLC, on August 12, 2020, check amount $20.00. Complex Mail and Property is interferring (sic) with my effort to do legal research and meaningful access to the Courts.
>
> Since I did not purchase this legal case and/or legal research with postage stamps, I would like to request this legal case and have complex mail stop delaying my legal research from Elite Paralegal Service.

(*Id.*)

On November 5, 2020, Plaintiff received a memo from the Meadows Unit Grievance Coordinator stating that his Inmate Informal Complaint Resolution had been received, and he should expect a response by November 25, 2022, but if he did not receive a response, he could submit a formal grievance between November 27, 2020 and December 3, 2020. (Doc. 48 at 27.) Plaintiff did not receive a response to his Informal Complaint Resolution. (PSOF ¶ 35(5).)

On November 30, 2020, Plaintiff submitted a Formal Grievance to CO III Nonnamaker. (Doc. 48 at 28.) In it, he reiterated that he never purchased anything with postage stamps, requested a review of the last check ADCRR sent to EPS on his behalf,

---

[2] Plaintiff appears to reference the date the mail was confiscated, not the date he received notice. The Inmate Property/Contraband Disposition Tracking Form, which would have showed when the confiscation occurred, is not in evidence. Where dates or other information on this form are relevant, the Court will construe them in favor of Plaintiff as the nonmovant.

- 7 -

and complained that Complex Mail and Property was interfering with his efforts to do meaningful legal research and access to the courts. (*Id.*) He requested a review of the issue and for staff to "stop contrabanding my legal research and case law." (*Id.*; PSOF ¶ 60.) Nonnamaker acknowledged receipt of the Inmate Grievance (Doc. 48 at 28), but he did not enter it into the Meadows Unit Grievance Log. (Doc. 48 at 40–41.) Plaintiff did not receive a response to this Grievance. (PSOF ¶ 35(7).)

On January 21, 2021, Plaintiff filed a Grievance Appeal regarding the same issue, and the Grievance Appeal was returned to him unprocessed based on "no proof of Formal Grievance on file." (Doc. 48 at 29.) Plaintiff's attempts to prove he did not violate a Department rule were ignored at every stage of the grievance process. (PSOF ¶ 35(12).)

On February 4, 2021, Plaintiff submitted an Inmate Letter to the Grievance Coordinator via the Inmate Letter Box, notifying the Grievance Coordinator of a mistake in processing his Formal Grievance and requesting an investigation into when the mistake occurred. (Doc. 48 (Pl. Aff.) ¶¶ 74–75.) Plaintiff did not receive a response to this Inmate Letter. (*Id.* ¶ 77.) On February 22, 2021, Plaintiff sent CO III Nonnamaker and Assistant Deputy Warden Byrd an Inmate Letter concerning the loss of his Formal Grievance, and he also received no response to this Inmate Letter. (*Id.* ¶¶ 78–79.)

Plaintiff received other mail from EPS on October 21, 2020, November 6, 2020, and November 11, 2020. (DSOF ¶¶ 52–55.)

**IV.     Defendant's Motion for Summary Judgment**

Defendant argues he is entitled to summary judgment because Plaintiff cannot show Defendant was personally involved in destroying or disposing of Plaintiff's mail, Plaintiff was given notice and numerous avenues to appeal the confiscation and destruction of his mail but chose not to do so, and the confiscations were reviewed by an independent officer. (Doc. 41 at 1.) Defendant also argues he is entitled to qualified immunity. (*Id.* at 1–2.)

**A.     Due Process Legal Standard**

Liberty interests that entitle a prisoner to due process are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate

in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted). To determine whether a prisoner is entitled to the procedural protections afforded by the Due Process Clause, the Court must look to the particular restrictions imposed and ask whether they "'present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.'" *Mujahid v. Meyer*, 59 F.3d 931, 932 (9th Cir. 1995) (quoting *Sandin*, 515 U.S. at 486). "The interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment." *Procunier v. Martinez*, 416 U.S. 396, 418 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 413. (1989). Thus, "the decision to censor or withhold delivery of correspondence to a prisoner must be accompanied by minimum procedural safeguards." *Krug v. Lutz*, 329 F.3d 692, 697 (9th Cir. 2003). These include notice and the right to a two-level review, meaning a prisoner must be able to "appeal the exclusion of incoming publications to a prison official other than the one who made the initial exclusion decision." *Id.* at 697−698.

### B.  Discussion

Defendant argues he is entitled to summary judgment because "[l]iability under a § 1983 claim arises 'only upon a showing of personal participation by the defendant,'" and Plaintiff cannot show that Defendant's acts or omissions caused a due process violation. (*Id.* at 9−10 (citing Taylor *v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988)).) Defendant states that his only conduct in this action was to receive and review Plaintiff's incoming mail, complete the initial part of the Inmate Property/Contraband/Disposition Tracking Form, and forward this form and the confiscated mail to Meadows Unit Mail and Property for further disposition. (Doc. 41 at 10.) Thereafter, the evidence shows he had no further involvement in what happened to Plaintiff's mail, and he argues his actions or omissions at the initial stage of this process did not cause a due process violation. *Id.*

Defendant also argues that, even if he was personally involved in the alleged violation, Plaintiff was not deprived of due process after Defendant confiscated Plaintiff's mail from EPS on August 6 and September 7, 2020 because Plaintiff received notice of these confiscations from the Meadows Unit Mail and Property staff, was able to speak to another officer or use the prison grievance process to object to the confiscations, and checked the box on the form, opting to have the mail destroyed instead of held for an appeal. (Doc. 41 at 11−12.) Defendant does not address the October 30, 2020 confiscation and has not produced the relevant Inmate Property/Contraband/ Disposition Tracking Form for this mail or provided any clear statements or other evidence that he was not involved in this confiscation, so the Court construes in Plaintiff's favor that Defendant also confiscated Plaintiff's October 30, 2020 mail. (*See* Doc. 1 at 8 ¶¶ 1, 3).

Plaintiff argues Defendant personally participated in the alleged due process violation by (1) "falsifying a state public document," in this case, the Inmate Property/Contraband/Disposition Tracking Form, by stating that the confiscated mail was in violation of DO 914.1.2.3, even though Plaintiff had not made any purchases with postage stamps; (2) failing to submit the confiscated mail to CIU for an investigation, as required by ADCRR policy, DO 914; (3) failing to notify the sender, EPS, of the rejection and thereby giving EPS an opportunity to object to it; and (4) failing to respond to Plaintiff's September 14, 2020 Inmate Letter. (Doc. 46 at 7.) Plaintiff argues that these actions or inactions of Defendant prevented him from receiving due process, including a hearing where he could present evidence to prove he followed institutional rules for purchasing services from an outside vender. (*Id.*)

Because there is no evidence Plaintiff ever purchased services from EPS with postage stamps, a reasonable jury could conclude that Defendant confiscated Plaintiff's incoming mail from EPS without a valid penological purpose. Nonetheless, "the decision to censor or withhold delivery of a particular letter" does not constitute a due process violation when the confiscation is "accompanied by minimum procedural safeguards." *Procunier*, 416 U.S. at 417. Here, it is undisputed Plaintiff received notice of each of the

confiscations at issue and had the opportunity to select a disposition for his August 6 and September 7, 2020 mail, including the option of having it held for appeal, which he did not invoke, choosing instead to have it destroyed. At least as to the first two confiscations, then, Plaintiff was given notice and the option to appeal and was therefore afforded sufficient due process protections. *See Allen v. Wood*, 970 F. Supp. 824, 832 (E.D. Wash. 1997) ("Plaintiff admits he was given notice of each mail rejection and had the opportunity to appeal, if he chose to do so. Accordingly, plaintiff received sufficient due process of law in conjunction with the rejection of his mail"); *Holmes v. Schachtsick*, 2008 WL 2404946, at *3 (D. Or. June 10, 2008) (granting defendant's motion for summary judgment on plaintiff's due process mail claim where it was "uncontradicted" that plaintiff received notice of the rejection of his incoming mail and a two-level administrative review procedure). Moreover, Plaintiff cannot show he suffered a cognizable injury because he did not object to the destruction of his confiscated EPS brochures, which he had already received on multiple prior occasions.

The facts are less clear regarding Plaintiff's mail confiscated on October 30, 2020. Construed in Plaintiff's favor, Defendant also confiscated this mail, and the mail contained legal research Plaintiff had properly purchased from EPS, which Plaintiff needed for his criminal defense. These facts also do not show, however, that Plaintiff suffered a due process violation due to any actions or inactions of Defendant. Regardless of who initially confiscated this mail, it is undisputed that Officer Camacho, who was assigned to Meadows Unit Mail and Property, provided Plaintiff notice of the confiscation, and after that, Camacho, not Defendant, withheld the mail from Plaintiff. (DSOF ¶ 45; PSOF ¶¶ 46−48.) Even if Camacho did so without a valid penological purpose, his withholding of Plaintiff's mail, and any potential due process violations arising therefrom, cannot be attributed to Defendant, who no longer had any personal involvement in the disposition of the mail.

There is also no evidence Defendant interfered with Plaintiff's attempts to grieve the confiscation of this mail through the prison grievance process or was responsible for the breakdown of that process wherein Plaintiff received no responses to any of his

complaints, and his final Grievance Appeal was rejected due to Officer Nonnamaker's failure to log Plaintiff's Inmate Grievance. Defendant's failure to respond to Plaintiff's September 14, 2020 Inmate Letter is also insufficient to show a due process violation because that Inmate Letter pertained to Plaintiff's September 7, 2020 mail, and the evidence shows Plaintiff received notice of that confiscation and a chance to appeal to an independent official but consented instead to have the mail destroyed.

Defendant's failure to direct Plaintiff's confiscated mail to the CIU also does not constitute a due process violation because this omission did not prevent Plaintiff from receiving "minimum procedural safeguards," for the mail deprivation, including notice and a chance to appeal to an independent official. *Krug*, 329 F.3d at 697. Although Plaintiff claims CIU would have investigated the issue and held a hearing, permitting him to present evidence that he did not violate ADCRR rules against paying for services with postage stamps, there is no evidence Plaintiff was criminally charged or faced any penalties (beyond having his mail confiscated) that called for a CIU investigation or any additional due process protections. Under these facts, Defendant's mere failure to adhere to ADCRR policy for sending confiscated mail to CIU does not give rise to a constitutional claim. *Robledo v. Bautista*, 2020 WL 1640607, at *4 (D. Ariz. Apr. 2, 2020) ("Plaintiff claims regarding Defendant Bautista's alleged failure to follow the mail procedure fails to state a claim. And a mere violation of a Department Order or prison policy does not amount to a constitutional violation."); *Case v. Kitsap County Sheriff's Dep't*, 249 F.3d 921, 930 (9th Cir.2001) (quoting *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir.1997) ("[T]here is no § 1983 liability for violating prison policy. [Plaintiff] must prove that [the official] violated his constitutional right . . . .").

Finally, Plaintiff's argument that EPS was not notified of the confiscations of its mail in this action also does not show Plaintiff suffered a due process violation. The Supreme Court has held that publishers "have a legitimate First Amendment interest" in mailing their publications to prisoners who wish to receive them. *Thornburgh*, 490 U.S. at 408. But even if this finding applies to EPS, EPS is not a plaintiff in this action, and any

potential due process claim it may have based on any alleged violations of its First Amendment right to send prisoners mail would not give rise to a separate claim by Plaintiff.

Because there is no evidence Defendant violated Plaintiff's Fourteenth Amendment due process rights, the Court will grant summary judgment to Defendant on this claim and dismiss Defendant and this action with prejudice.[3]

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendant's Motion for Summary Judgment (Doc. 41).

(2) Defendant's Motion for Summary Judgment (Doc. 41) is **granted**, and the action is terminated with prejudice. The Clerk of Court must enter judgment accordingly.

Dated this 26th day of May, 2023.

Michael T. Liburdi
United States District Judge

---

[3] Because the Court will dismiss this claim on the merits, it need not consider Defendant's argument that he is entitled to qualified immunity.